IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| CUSTOM SEAL, INC., | § | |
| | § | |
| Plaintiff/Relator, | § | CIVIL ACTION NO. _____ |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| DURO-LAST ROOFING, INC. | § | |
| | § | |
| Defendant. | § | |
| | § | |
| _____ | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Custom Seal, Inc. ("Custom Seal") files this Complaint for False Patent Marking under Section 292 of the Patent Act (35 U.S.C. §292), False Advertising under the Lanham Act (15 U.S.C. §1125(a)), tortious interference with business relations, and unfair competition against Defendant Duro-Last Roofing, Inc. ("Duro-Last") and alleges as follows:

## I. PARTIES

1.      Custom Seal is a corporation organized under the laws of the State of Ohio.  Custom Seal maintains its principle place of business in Fremont, Ohio.

2.      As to the false marking claim, Custom Seal represents the United States and the public, including as Duro-Last's primary competitor in the prefabricated commercial and industrial, flat and low-sloped roofing market.

3.      Upon information and belief, Duro-Last, Inc. is, and at all relevant times mentioned herein was, a corporation organized and existing under the laws of the State of Michigan with its principle place of business in Saginaw, Michigan.  Duro-Last's

registered agent for service of process is: CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, TX 75201.

4.      Duro-Last regularly solicits, conducts, and transacts business in Texas, and within the Eastern District of Texas, itself and through its contractors.

## II. <u>JURISDICTION AND VENUE</u>

5.      This action arises in part under the patent laws of the United States, Title 35 United States Code §1, *et seq*.  This Court has jurisdiction over this action under 15 U.S.C. §1121, and 28 U.S.C. §§1331, 1338(a), and 1395.  Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over the state law claims because the claims are so related to Custom Seal's False Marking and Lanham Act claims as to form the same case or controversy.

6.      The Court has personal jurisdiction over the Defendant because Duro-Last has sufficient venue contacts with the forum as a result of business conducted within the State of Texas and within the Eastern District of Texas.  Duro-Last regularly transacts business in the Eastern District of Texas and this action is based in part on Duro-Last's commercial activities carried on in Texas.  One of Defendant's primary salespeople, and a key fact witness in the case (*see* para. 75-83), resides within the Eastern District, and on information and belief, Texas has one of the highest concentrations of Duro-Last roofing products in the country.   Duro-Last, directly or through its Texas contractors, offers for sale, sells, imports, advertises, and markets products and services that violate the false marking statute and Lanham Act as described more particularly below.  Personal jurisdiction thus also exists specifically over the Defendant because of its conduct in using, selling, offering to sell and/or importing falsely-marked and falsely-advertised

145307.v1

products within the State of Texas, and more particularly within the Eastern District of Texas.

7.      Contractors of Defendant who sell these products in Texas include Prime Source Construction, Parsons Commercial Roofing, Engineered Roofing Systems, LLC, DK Haney Roofing, Harrison Roofing, Jaco Roofing & Construction, Inc, Ultimate Roofing Systems, Inc., United Roofing & Sheetmetal, Prime Source Construction, Texas Elite Roofing, S.T.S.P., Inc., and dozens more. Duro-Last advertises that Parsons Commercial Roofing has been its Contractor of the Year for the last five years, and has exceeded sales of $7 million in Duro-Last products for each of the last four years. Moreover, several contractors who are based outside of Texas regularly come into this state to install Duro-Last products.

8.      Custom Seal also has extensive ties in Texas, including its National Sales and Accounts Manager. Moreover, Custom Seal products are on roofs in Texas and Custom Seal has ongoing business relationships with Texas-based roofing contractors.

9.      Venue is proper in the Eastern District of Texas under 15 U.S.C. §22, and 28 U.S.C. §§ 1391(b) – (c) and 1395(a).

### III. FACTS

10.     Custom Seal repeats and realleges the allegations of paragraphs 1 through 9 as though fully set forth in their entirety.

11.     Custom Seal and Duro-Last are, and have been for the last 14 years, the only two distributors of prefabricated flat and low-sloped roofing systems in the United States.

145307.v1

12.     Between 1983 and 1996, R.L. Mayle Construction was a contractor for Duro-Last, installing large quantities of Duro-Last's roofing products throughout the United States.  R.L. Mayle Construction was a repeat Duro-Last "Contractor of the Year" in 1993 and 1994 and was the first-ever Duro-Last contractor to reach $2,000,000.00 in annual sales.

13.     Around 1996, the relationship between R.L. Mayle Construction and Duro-Last began to deteriorate as Duro-Last hired very inexperienced roof inspectors who demanded that experienced Duro-Last contractors, such as R.L. Mayle Construction, employ roofing procedures that R.L. Mayle Construction deemed unwarranted.

14.     Eventually, Robert L. Mayle, the owner of R.L. Mayle Construction, repeatedly confronted Duro-Last officials about his dissatisfaction with its inexperienced roof inspectors.

15.     These discussions led Mr. Mayle to believe that, despite his status as a longtime and highly respected Duro-Last contractor, he would be better served to start his own company, Custom Seal, which would compete with Duro-Last in the prefabricated roofing market.

16.     Thereafter, Duro-Last cancelled its relationship with Mr. Mayle.

17.     Custom Seal went on to operate as a separate company that distributes its own prefabricated roofing products.  Since then, Duro-Last and Custom Seal remain the only companies in the nation which distribute pre-fabricated roofing material designed for installation on flat and low-sloped roofs, which are usually on commercial and industrial buildings.

145307.v1

18.    Mr. Mayle's decision to start Custom Seal infuriated Duro-Last officials and in 1997, promptly after Mr. Mayle started his own competing business, Duro-Last sued Custom Seal for infringement of U.S. Patent Nos. 4,652,321 ("the '321 patent") and 4,872,296 ("the '296 patent").   The case went to trial in 1999, and the jury determined that both of Duro-Last's patents were invalid for obviousness.   A copy of the jury verdict is attached as Exhibit A.

19.    On appeal, the Federal Circuit ruled on February 28, 2003, agreeing that both patents were invalid for obviousness as determined by the jury (the "Federal Circuit Ruling").   *See Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098 (Fed. Cir. 2003).   A copy of the '321 patent is attached as Exhibit B, and a copy of the '296 patent is attached as Exhibit C.

20.    At the time of the Federal Circuit Ruling, any product or method once covered by the claims of the '321 patent or '296 patent was no longer protected by the patent laws of the United States and was thus "unpatented."

21.    Defendant knew that the '321 patents and '296 patents were declared invalid due to obviousness by the Federal Circuit.

22.    Remarkably, in spite of the Federal Circuit's ruling, Duro-Last has continued to mark its pre-fabricated roofing products (including at least the following products: stacks, corners, boots, scuppers, and curbs) (the "Falsely Marked Products") with U.S. Patent Nos. 4,652,321 and 4,872,296.

23.    It was a false statement and misrepresentation for defendant to mark any of its products with U.S. Patent Nos. 4,652,321 and 4,872,296 after the Federal Circuit's Ruling.

145307.v1

24.     Defendant knew that after the Federal Circuit Ruling, the Falsely Marked Products were not covered by the '321 patents and '296 patents when they were marked.

25.     The '321 patent also expired on July 10, 2005, while the '296 patent expired on July 30, 2007.  Even without the Federal Circuit's Ruling, it was a false statement for defendant to mark any of its products with the '321 patent or '296 patent after those patents would have otherwise expired.

26.     Duro-Last has also marked some of these same products with U.S. Patent No. 4,799,986 ("the '986 patent").  The '986 patent solely is a method patent, and thus cannot be marked on a product.  Moreover, the '986 patent also expired on July 30, 2007. A copy of the '986 patent is attached as Exhibit D.

27.     Because U.S. Patent Nos. 4,799,986 is solely a method patent, it was a false statement and misrepresentation for defendant to mark any of its products with U.S. Patent Nos. 4,799,986 at any time, whether before or after its July 30, 2007 expiration.

28.     In addition to physically marking the patent numbers on the Falsely Marked Products, after the Federal Circuit Ruling, Defendant continued to represent to the public through advertising in its specification manuals, brochures, online, and through its contractors and sales force, that the Falsely Marked Products were "patented". Examples are attached as Exhibits E (stacks), F (corners), G (drain boots), H (scuppers), I (curbs) and J (a brochure touting all of these items as "patented.").

29.     Duro-Last purports to solicit business from over 2,000 roofing contractors throughout the United States.  Duro-Last has a sophisticated marketing plan that consistently touts to these contractors, building owners, and the general public that the Falsely Marked Products are "patented."

145307.v1

30.     These advertisements and representations are designed to influence the marketplace and impress contractors and potential customers. Moreover, they deter competition by expressly misrepresenting that the Falsely Marked Products are "patented."  Both of these functions serve to divert revenue away from Custom Seal and to unjustly enrich Duro-Last, which, until now, has enjoyed tremendous pecuniary benefit from sales on its Falsely Marked Products.

31.     Regarding attached Exhibits E-J, at the time of the filing of this complaint, they are all available on Duro-Last's website and are used to promote Duro-Last's products around the country and throughout Texas.  For example, Engineered Roofing System, LLC, based in Texas, borrows an excerpt from Duro-Last's homepage, touting its "patented prefabrication methods."  *See* *http://www.ers-texas.com/Duro-Last.html*. ERS has won numerous awards from Duro-Last for roofs installed throughout Texas.  *See* *http://www.ers-texas.com/Home.html*.

32.     Defendant knew that after the Federal Circuit Ruling, the Falsely Marked Products were not covered by the '321 patents and '296 patents when the term "patented" was included on the advertisements for those Falsely Marked Products.

33.     Defendant also knew that the Falsely Marked Products were *never* covered by the '986 method patent.

34.     Defendant has decades of experience applying for patents, obtaining patents, licensing patents, and litigating in patent infringement lawsuits.

35.     Defendant is a large, sophisticated corporation that employs both in-house and outside legal counsel.

36.     Defendant knows that a patent that has been declared obvious does not cover any product.

37.     Defendant also knows that a patent expires and that an expired patent cannot protect any product.

38.     Defendant knew that it was a false statement to mark its products with U.S. Patent Nos. 4,652,321 and 4,872,296 after the Federal Circuit Ruling, and to mark any of its products with U.S. Patent No. 4,799,986 at any time.

39.     Defendant also knew that it was false advertising to represent to the public through advertising in its specification manuals, brochures, online, and through its contractors, that the Falsely Marked Products were "patented".

40.     Nonetheless, on information and belief, Duro-Last encourages its contractors to advertise Duro-Last's systems as "patented", and provides contractors throughout Texas and around the country with materials that falsely claim that the Falsely Marked Products are patented.  For example, Duro-Last's website is designed to permit salespeople, contractors, building owners, and the public to readily access these materials to easily print – and even e-mail – the materials directly from Duro-Last's website.

41.     All of this comes after Custom Seal was dragged through six years of litigation – brought on by Duro-Last's attempt to bankrupt its only competitor – prior to obtaining a final ruling confirming the obviousness of Duro-Last's patents.  Now, Duro-Last is flaunting the Federal Circuit Ruling by knowingly ignoring it in an effort to continue to dominate the marketplace, even after Duro-Last lost the trial and Federal Circuit Ruling to Custom Seal.

42.     Meanwhile, since 2003, Custom Seal's sales have slumped as a proximate result of Duro-Last's continuous misconduct described herein, much of which has taken place in Texas.

43.     On the other hand, Duro-Last, on information and belief, and in amount to be determined with precision upon Defendant's production of documents pursuant to Fed. R. Civ. P. 26, has continued to generate millions of dollars a year in profits since 2003 on the Falsely Marked Products.

44.     Duro-Last's decision to continue marking and marketing to the public the Falsely Marked Products as patented has materially enhanced its ability to remain the dominant competitor in the prefabricated roofing industry, all to Custom Seal's severe detriment.

45.     In addition to the above '321 and '296 patents, on information and belief, Duro-Last continues to falsely mark and falsely advertise its "gravel stop"/"drip edge" and "two-way air vent" products.

46.     On information and belief, these products are being respectively marked with U.S. Patent Nos. 4,848,045 ("the '045 patent") and 4,909,135 ("the '135 patent"). Copies of these patents are attached as Exhibits K and L.

47.     U.S. Pat. Nos. 4,848,045 and 4,909,135 are expired.  The '045 patent expired May 5, 2008.  The '135 patent expired March 1, 2009.  In spite of this, Duro-Last continues to knowingly mark and falsely advertise products with these patents.

48.     Moreover, these products are currently touted on Duro-Last's website as "patented" as set forth in Exhibits M and N.  The air vent is also touted as patented on Exhibit J, attached.

49.     These markings and advertisements are also actionable under the false-marking statute and Lanham Act for all the reasons set forth above and are part of Duro-Last's "Falsely Marked Products."

## INJURY IN FACT TO THE UNITED STATES

50.     Custom Seal realleges and incorporates by reference the allegations set forth in paragraphs 1 through 49.

51.     Defendant's false marking injured the United States arising from Defendant's violations of federal law, specifically, Defendant's violation of 35 U.S.C. § 292(a).

52.     Defendant's false marking caused proprietary injuries to the United States.

53.     The marking and false marking statutes exist to give the public notice of patent rights.  Congress intended the public to rely on marking as a ready means of discerning the status of intellectual property embodied in an article of manufacture or design, such as the Falsely Marked Products.

54.     Federal patent policy recognizes an important public interest in permitting full and free competition in the use of ideas which are, in reality, a part of the public domain — such as those described in the Falsely Marked Patents.

55.     Congress's interest in preventing false marking was so great that it enacted a statute which sought to encourage private parties to enforce the statute.  By permitting members of the public to bring *qui tam* suits on behalf of the government, Congress authorized private persons to help control false marking.  Custom Seal is Duro-Last's only competition in this area and has been severely harmed by Duro-Last's willful actions. Thus, no persons are better situated than Custom Seal to bring this action.

56.    Defendant's false marking misleads the public into believing that the Falsely Marked Patents give Defendant control of the Falsely Marked Products (as well as like products), and places the risk of determining whether the Falsely Marked Products are controlled by such patents on the public rather than on defendant, thereby increasing the cost to the public of ascertaining whether Defendant in fact controls the intellectual property embodied in the Falsely Marked Products.  Indeed, Duro-Last has advertised itself as having "exclusive patents."

57.    Defendant's false marking also creates a misleading impression that the Falsely Marked Products are technologically superior to previous and other available products, as articles bearing the term "patent" may be presumed to be novel, useful, and innovative.  This misimpression is particularly egregious when a U.S. court already has determined otherwise.  Duro-Last's continued deception demonstrates it is thumbing its nose at the federal jury and the Federal Circuit Ruling.

58.    Each Falsely Marked Product or advertisement thereof, because it is marked with or displays the Falsely Marked Patents is likely to, or at least has the potential to, discourage or deter persons or companies from commercializing a competing product.  This is particularly poignant in an industry in which Duro-Last has used the Falsely Marked Products to dominant the market and deter any and all competitors.

59.    Defendant's marking of the Falsely Marked Products with obvious patents and/or advertising thereof has quelled competition with respect to similar products to an immeasurable extent, thereby causing harm to the United States in an amount that cannot be readily determined.

145307.v1

60.     Defendant has wrongfully and illegally advertised patents that it does not possess and, as a result, has benefited by increasing, or at least maintaining, its market power or commercial success with respect to the Falsely Marked Products.

61.     Each individual false marking and advertisement with such marking is likely to harm, or at least potentially harms, the public. Thus, each such false marking is a separate offense under 35 U.S.C. § 292(a).

62.     Each offense of false marking creates a proprietary interest of the United States in the penalty that may be recovered under 35 U.S.C. § 292(b).  Moreover,  Duro-Last is subject to penalties for each product falsely marketed, advertised, or promoted as "patented" whether the physical product was actually marked or not.  The number of Falsely Marked Products, on information and belief and in amount to be determined with precision upon Defendant's production of documents pursuant to Fed. R. Civ. P. 26, is believed to be in the millions.

63.     For at least the reasons stated above, Defendant's false marking caused injuries to the sovereignty of the United States arising from Defendant's violations of federal law, and caused proprietary injuries to the United States.

## FEDERAL CLAIMS

## COUNT I

## False Marking Claim 35 U.S.C. §292

64.     Custom Seal repeats and realleges the allegations of paragraphs 1 through 63 as though fully set forth in their entirety.

65.     Duro-Last falsely marked the Falsely Marked Products with the '296 Patent and '321 Patent, which were declared obvious after the Federal Circuit Ruling and

which both have expired, and the '986 Patent, which was a method patent that cannot be marked and which has also expired.   Duro-Last also falsely marked the "gravel stop"/"drip edge" and "two-way air vent" products with the '045 Patent and '135 Patent after each of those had expired.

66.    Duro-Last knew or should have known that falsely marking the Falsely Market Products, and advertising them, with the said patents was in violation of 35 U.S.C. § 292.

67.    Duro-Last intended to deceive the public by its advertising and by marking the Falsely Marked Products with these patents.

## COUNT II

### False Advertising Under the Lanham Act

68.    Custom Seal repeats and realleges the allegations of paragraphs 1 through 67 as though fully set forth in their entirety.

69.    Duro-Last's actions constitute false advertising in violation of the Lanham Act, 15 U.S.C. §1125(a).

70.    Duro-Last made literally false statements when it advertised its Falsely Marked Products as being "patented" to deceive its intended audience, both Custom Seal's and Duro-Last's customers and the general public, and the false statement of fact was material in likely influencing the decisions of customers.  Duro-Last false statements were made in bad faith.

71.    The Falsely Marked Products and false advertising related to those products entered interstate commerce throughout the country.

145307.v1

72.     Custom Seal has been severely injured, as its sales since the Federal Circuit Ruling have declined steadily, as has its goodwill with customers, with regards to Custom Seal's own pre-fabricated roofing products.

## STATE CLAIMS

## COUNT III

### Tortious Interference with Existing Business Relations and Prospective Contracts

73.     Custom Seal repeats and realleges the allegations of paragraphs 1 through 72 as though fully set forth in their entirety.

74.     Duro-Last has interfered with Custom Seal's existing business relations and prospective customers by falsely asserting that Duro-Last's product is protected by patent.   On information and belief, Duro-Last also has threatened Custom Seal's contractors with reprisal or business interruption if they continue doing business with Custom Seal.

75.     For example, Duro-Last previously refused to sell products to S.T.S.P., Inc. ("S.T.S.P."), a Texas based roofing contractor because S.T.S.P.'s owner, Chris Zube, also purchased roofing material from Custom Seal when warranted.

76.     Mr. Zube called Buddy Wilson, Duro-Last's lead Texas salesman, and inquired as to why S.T.S.P. was being cut off from Duro-Last.

77.     Mr. Wilson stated that it was because Zube would not exclusively deal with Duro-Last, which already occupied and continues to occupy an extremely large part of the prefabricated roofing market.

78.     For example, Mr. Wilson and Mr. Zube had the following exchange:

145307.v1

| Zube: | So you're telling me if I axe Custom Seal we're cool? |
| Buddy: | That's exactly what I'm telling you. |
| Zube: | Ok.  All right, well let's go down the road. |

79.     Buddy Wilson then went on to succinctly explain Duro-Last's views toward its only competitor, Custom Seal, and its customers:

> And any body who is associated with us knows who the fuck Bob Mayle is.  They know what the hell he's doing and it's a very sore spot with Duro-Last.  They have asked us off the record to cut off anybody who is associated with Custom Seal.

80.     Mr. Zube then asked if John Burt, the then-president and founder of Duro-Last, made that order.  Mr. Wilson answered, "Absolutely."

81.     Mr. Zube also asked Mr. Wilson if Mr. Burt was taking such a hard line against Custom Seal because of the patent litigation over '296 and '321 and Mr. Wilson answered, "Yes.  Well something got in their crack, and that's probably exactly what it was, but I don't know what it was."

82.     Through coercion and other illegal conduct, Duro-Last and Buddy Wilson willfully interfered with Custom Seal's relationship with S.T.S.P. to ensure that S.T.S.P. would contract exclusively with Duro-Last except for those roofing jobs referred by Custom Seal.   Upon information and belief, Duro-Last willfully and intentionally interfered with Custom Seal's relationships with distributors and retailers by disparaging Custom Seal's products.  On information and belief, this was not a sole occurrence.

83.     Custom Seal has been actually damaged as a direct and proximate result of Duro-Last's interference with Custom Seal's existing business relations and has lost the value of relations it secured, as well as prospective relations.  Custom Seal seeks damages

and attorneys' fees and, because Duro-Last maliciously interfered with Custom Seal's business relations, Custom Seal seeks an award of exemplary damages.

## COUNT IV

## Unfair Competition

84.     Custom Seal repeats and realleges the allegations of paragraphs 1 through 83 as though fully set forth in their entirety.

85.     Duro-Last's conduct, including its common law and Lanham Act violations, also constitute unfair competition under the common law of the State of Texas.  Duro-Last's behavior also constituted fraud because it willfully misrepresented and made false statements to customers, contractors, and the public that the Falsely Marked Products are protected by valid and unexpired patents with the intent that customers, contractors, and the public rely on those false statements to their detriment.

86.     Those false statements and willful misrepresentations have deceived the public and have also deceived customers and contractors, causing injury to Custom Seal in lost sales and loss of goodwill associated with Custom Seal's own products.  Duro-Last also has interfered with Custom Seal's business relations.

87.     Duro-Last intended to harm Custom Seal in its business and property by its actions, and its violations of the Lanham Act and Texas common law were willful and malicious.

88.     Custom Seal seeks an award of damages, exemplary damages, and recovery of its attorneys' fees.

145307.v1

## PRAYER FOR RELIEF

WHEREFORE, by reasons of the foregoing, Custom Seal respectfully requests that the Court:

A.      Enter judgment against Duro-Last and in favor of Custom Seal for the violations of 35 U.S.C. §292 alleged in this complaint;

B.      Enjoin Duro-Last from false and misleading misrepresentations regarding its Falsely Marked Products;

C.      Order Duro-Last to pay a civil monetary fine of not more than $500 per false marking offense, pursuant to *Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295 (Fed. Cir. 2009), one-half of which shall be paid to the United States;

D.      Enter judgment against Duro-Last and in favor of Custom Seal for the violations of 15 U.S.C. §1125(a) alleged in this complaint;

E.      Order the disgorgement of all of Duro-Last's profits related to its misconduct pursuant to 15 U.S.C. §1117(a);

F.      Award Custom Seal statutory and compensatory damages pursuant to 15 U.S.C. §1117(a) for its damages due to lost sales and loss of goodwill sustained as a result of Duro-Last's false advertising;

G.      Award increased and treble damages for Duro-Last's willful conduct pursuant to 15 U.S.C. §1117(a);

H.      Deem this case an "exceptional case" within the meaning of 15 U.S.C. §1117(a) and 35 U.S.C. §285 and order Duro-Last to pay Custom Seal's costs and attorney fees;

145307.v1

I.	Order Duro-Last to pay actual damages proximately caused by its tortious conduct in violation of the common law of the State of Texas;

J.	Award exemplary damages pursuant to Tex. Civ. Practice & Rem. Code Ann. §41.000 *et seq.*; and

K.	Custom Seal be granted such other and further relief as the Court deems just and proper.

Date:	March 16, 2011

Respectfully submitted,

/s/ Mark Werbner_____
**MARK S. WERBNER**
State Bar No. 21179700
**JOEL ISRAEL**
State Bar No. 24055717
**SAYLES | WERBNER**
*A Professional Corporation*
4400 Renaissance Tower
1201 Elm Street
Dallas, Texas  75270
(214) 939-8700
FAX (214) 939-8787


**ANDREW R. MAYLE**
Ohio Bar No. 0075622
**Mayle, Ray & Mayle** LLC
210 South Front Street
Fremont, Ohio 43420
(419) 334-8377
FAX (419) 355-9698
*amayle@mayleraymayle.com*

## DEMAND FOR JURY TRIAL

Plaintiff Custom Seal respectfully requests a trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure of any and all issues triable of right by a jury.

Dated: March 16, 2011.

Respectfully submitted,

/s/ Mark Werbner
**MARK S. WERBNER**
State Bar No. 21179700
**JOEL ISRAEL**
State Bar No. 24055717
**SAYLES | WERBNER**
*A Professional Corporation*
4400 Renaissance Tower
1201 Elm Street
Dallas, Texas  75270
(214) 939-8700
FAX (214) 939-8787

Attorneys for CUSTOM SEAL, INC.

145307.v1